**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aquastar Pool Products Incorporated,<br><br>Petitioner,<br><br>v.<br><br>Paramount Pool & Spa Systems,<br><br>Respondent. | No. CV-19-00257-PHX-DWL<br><br>**ORDER** |

    Aquastar Pool Products, Inc. ("Aquastar") has filed a motion to compel Paramount Pool & Spa Systems ("Paramount") to comply with a subpoena duces tecum. (Doc. 1.) The Court heard oral argument on January 15, 2019. As explained below, the Court will grant Aquastar's motion to compel but require Aquastar to provide reasonable compensation to Paramount for its production expenses.

**BACKGROUND**

    Aquastar and Color Match Pool Fittings, Inc. ("Color Match") are competitors in the pool equipment industry. Aquastar has sued Color Match in federal court in California, asserting patent infringement claims, and Color Match has asserted patent-related counterclaims. (Docs. 1-3, 1-4.)

    In September 2018, Aquastar issued a subpoena to Paramount, an Arizona-based non-party. (Doc. 1-5.) Request Number Three of the subpoena sought the following: "All documents including emails mentioning any of these terms since 2013: 'Aquastar'; 'Aqua Star'; 'Olaf'; 'Mjelde'; 'Full Circle'; 'Eclipse'; or 'Blue Square.'" (Doc. 1-5 at 5.) The

parties subsequently agreed to limit Request Number Three to the mailboxes of two particular Paramount employees, Lewis Ghiz and Lou Priouseschi. (Doc. 10-1 ¶ 4.)

On October 4, 2018, Paramount's counsel wrote a letter to Aquastar's counsel objecting to the subpoena because it failed to allow sufficient time to respond, was unduly burdensome, and sought unneeded and/or privileged material. (Doc. 1-7 at 2.) The letter further stated that Paramount would "not be producing documents in response to the subpoena" but was "willing to confer on all of the above issues at a time that is convenient for all parties." (*Id.*)

During the following weeks, the parties attempted to meet and confer. As part of this process, Aquastar provided a copy of the protective order that had been issued in the underlying case. (Doc. 1-10). On November 2, 2018, after the meet-and-confer discussions fizzled, Aquastar filed the presently-pending motion to compel as to Request Number Three. (Doc. 1.)[1] Paramount then filed a timely response (Doc. 8) and Aquastar filed a timely reply (Doc. 10).

On January 15, 2019, the Court held oral argument.

**ANALYSIS**

I. Timeliness

Aquastar's threshold argument is that Paramount forfeited its right to object to the subpoena by waiting one day too long to write an objection letter. (Doc. 1 at 5-6.) Aquastar argues that, under Federal Rule of Civil Procedure 45(d)(2)(B), any objections were due within 14 days of when the subpoena was served (*i.e.,* by October 3, 2018), yet Paramount didn't send its letter until October 4, 2018. (*Id.*) In response, Paramount argues the October 4 letter simply memorialized a series of oral communications between counsel that began well before the 14-day deadline elapsed. (Doc. 8 at 6-7.)

---

[1] Aquastar's motion also sought to compel the production of certain other categories of documents. However, Paramount produced some of those materials on November 20, 2018 (Doc. 8 at 1) and Aquastar's counsel stated, during the January 15 hearing, that only Request Nos. 1, 3, 4, 5, and 7 remained unresolved. In response, Paramount's counsel confirmed that Paramount had already produced all responsive, non-privileged documents in response to Request Nos. 1, 4, 5, and 7. Accordingly, it appears Request Number Three is the only category that remains unresolved.

Aquastar's forfeiture argument lacks merit. Paramount's counsel was in contact with Aquastar's counsel before the 14-day deadline elapsed. A finding of forfeiture is not required in these circumstances. *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (courts may decline to find forfeiture under Rule 45 where "counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged legal basis for the subpoena"); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 1991 WL 172930, *1 (N.D. Ohio 1991) ("[T]he parties' . . . course of conduct [is] relevant to the Court's determination of the question of waiver. . . . [A] strict interpretation of the Rule would discourage informal dispute resolution among parties who cause the issuance of subpoenas duces tecum and those to whom the subpoenas are issued.").

II. Undue Burden/Relevance

The parties dispute whether the materials sought in Request Number Three are relevant to the underlying patent litigation. Aquastar contends the materials are relevant to various issues, including its defense to Color Match's counterclaims, its damage claims, and the merits of its infringement claims. (Doc. 1 at 9-10). Aquastar's counsel further specified, during the motion hearing on January 15, that the materials may bear upon the issue of "willfulness" in the underlying litigation (which can affect damages). Paramount, meanwhile, argues Request Number Three is overbroad because some of the search terms are the names of Aquastar's competitors and, thus, "the subject matter of those emails goes far afield from the issues in the Patent Litigation." (Doc. 8 at 2.)[2] Paramount further argues that a heightened showing of relevance is required here, because this case involves a non-party subpoena, and Aquastar hasn't met that burden because it simply speculates the materials sought in Request Number Three might be relevant. (Doc. 8 at 2-6.) Paramount thus contends that complying with Request Number Three would constitute an "undue burden" under Rule 45(d)(3)(A). (Doc. 8 at 4.)

---

[2] Paramount also contends Request Number Three is overbroad because it is "unbounded by date or document form" (*see* Doc. 8 at 2), but this argument overlooks that Request Number Three contains a specific date cutoff: it only seeks documents "after 2013."

- 3 -

As an initial matter, it is important to note that the test for "relevance," in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34. *See, e.g., Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) ("It is well settled . . . that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34. Thus, the court must examine whether a request contained in a subpoena duces tecum is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production."); Fed. R. Civ. P. 45, advisory committee notes to 1970 amendment ("[T]he scope of discovery is the same as that applicable to Rule 34 and the other discovery rules."); S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary* (hereinafter "Gensler") at 1189 (2018) ("The scope of information that may be sought via subpoena is the same as the scope of discovery generally under Rule 26(b)."). Indeed, some courts have suggested that relevance should be construed even more broadly than usual when, as here, the judge overseeing the litigation over the subpoena isn't handling the underlying case. *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) ("[C]ourts with jurisdiction over ancillary or discovery matters should be cautious in determining what is relevant evidence to the main action . . . because of their unfamiliarity with the main action. Where there is doubt over relevance, . . . the court should be permissive.").

Nevertheless, non-parties are entitled to special consideration when it comes to subpoena requests under Rule 45. *See, e.g.*, *Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."). The proper way to afford this special consideration is to "weigh the burden to the subpoenaed party against the value of the information to the serving party.

Generally, this requires consideration of relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Soto v. Castlerock Farming & Transport, Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012) (citations and internal quotation marks omitted).

With this backdrop in mind, the Court concludes that Aquastar has adequately demonstrated a need for the requested materials. First, the Court is satisfied the materials sought by Request Number Three are "relevant to any party's claim or defense" in the underlying patent litigation "and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). Paramount is closely aligned with Color Match, which is Aquastar's adversary in the underlying litigation, and the keywords in Request Number Three seem tailored to capture documents that will be relevant to the infringement claims and counter-claims.[3] The search terms include "Aquastar," a variation thereof ("Aqua Star"), the first and last name of the current owner of Aquastar (Olaf Mjelde), two drain covers made by Aquastar ("Full Circle" and "Eclipse"), and Aquastar's distributor of the Eclipse drain ("Blue Square"). The responsive documents are thus likely to discuss such topics as sales and alternative designs—matters at the heart of the underlying litigation. The request is also proportional because (1) the amount in controversy in the patent litigation is significant—according to Aquastar's counsel, millions are at stake—and (2) Paramount's compliance costs are both relatively modest and, as explained in Section IV *infra*, will be paid by Aquastar. Second, the balancing test identified above cuts in Aquastar's favor because it has a need for the documents and the burden on Paramount will be minimal given the presence of a protective order and a cost-shifting award.

---

[3] The Court further notes that, although Paramount contends some of the keywords are less relevant than others (Doc. 8 at 2), it hasn't asked the Court to narrow Request Number Three by excising the less-relevant keywords—instead, it effectively seeks to quash the request in its entirety. This weakens its position. *Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 1 (D.D.C. 2005) (citation omitted) ("A court should be loathe to quash a subpoena if other protection of less absolute character is possible. Consequently, the movant's burden is greater for a motion to quash than if she were seeking more limited protection.").

III. Trade Secrets

The parties also dispute whether Request Number Three impermissibly seeks confidential information and/or trade secrets. Aquastar contends that Paramount's arguments on this issue aren't developed and can be addressed, in any event, by the protective order that's already in place in the underlying case. (Doc. 1 at 10.) Paramount argues that it operates in the same industry as Aquastar and the requested emails "contain confidential business information . . . . [about] business plans, projections, industry trends, and development possibilities." (Doc. 8 at 6.) Paramount further contends that the protective order won't provide sufficient protection because "Aquastar's counsel represents Aquastar in patent infringement cases related to the pool filter industry" and because Aquastar "is actively looking to innovate in this industry." (Doc. 8 at 6.)

The Court concludes that, although Paramount adequately established that the materials sought by Request Number Three contain confidential information and/or trade secrets,[4] Paramount is not entitled to withhold those materials from Aquastar because a protective order is already in place that will prevent Aquastar from misusing the information. (Doc. 10 at 7-8 ["Aquastar's attorneys are legally bound to use the documents for purposes only related to the patent infringement litigation and may not use the confidential information for personal benefit or to share with clients."].) During the January 15 hearing, Aquastar's counsel affirmed that he would abide by the protective order and Paramount's counsel acknowledged he had no reason to doubt this representation. A subpoena need not be quashed under these circumstances. *See, e.g.,* Fed. R. Civ. P. 45(d)(3)(B)(i) (district courts "may," but are not required to, quash subpoenas that seek "trade secret or other confidential research, development, or commercial information"); *Festus & Helen Stacy Foundation, Inc. v. Merrill Lynch, Pierce Fenner, & Smith*, 432 F. Supp. 2d 1375, 1380 (N.D. Ga. 2006) ("[The subpoenaed parties] argue that the requested information is highly sensitive, confidential business information. . . . [T]he

---

[4] During the January 15 hearing, Paramount's counsel avowed that he had personally reviewed the documents that would be responsive to Request Number Three and determined the documents contain both confidential/trade secret information and some attorney-client privileged information.

court finds that the confidentiality concerns are not sufficiently compelling to excuse [the subpoenaed parties] from providing the subpoenaed information, and the appropriate solution is rather to compel discovery of the documents subject to a protective order."); Gensler at 1218 ("Some courts may refuse to quash a subpoena seeking information about trade secrets because of the presence of a protective order, which arguably will protect any confidentiality interests.").

IV. Cost-Shifting and Sanctions

On the issue of cost-shifting, Aquastar argues that (1) it shouldn't be required to cover any of Paramount's production costs, because Paramount isn't a "disinterested third party," the asserted production costs are inflated, unsubstantiated, and insignificant, and it already took good-faith steps to narrow the scope of the subpoena, and (2) it should receive an affirmative award of sanctions because Paramount's initial decision to disobey the subpoena was unreasonable. (Doc. 1 at 8-9; Doc. 10 at 5-6.) Paramount's opposition brief didn't directly address these issues, but Paramount's counsel stated during the January 15 hearing that the documents responsive to Request Number Three could be reviewed for privilege and then produced in approximately 10 days at a cost of approximately $4,000.

The Court concludes that Paramount is entitled to reasonable compensation for its production costs. As noted in Section III above, the Court is satisfied that some of the materials sought by Request Number Three would qualify as Paramount's trade secrets or similar confidential information. Rule 45 provides that, when a non-party is required to produce such information pursuant to a subpoena, the non-party is entitled to reasonable compensation. *See* Fed. R. Civ. P. 45(d)(3)(C)(ii) ("In the circumstances described in Rule 45(d)(3)(B) [*i.e.,* a subpoena seeking trade secrets], the court may, instead of quashing or modifying the subpoena, order . . . production under specified conditions if the serving party . . . ensures that the subpoenaed person will be reasonably compensated."); *see also United States v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 372 (9th Cir. 1982) ("[A] witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or the producing party.").

Here, Paramount's cost estimate of approximately $4,000 is reasonable. It appears that Request Number Three generated thousands of responsive documents and Paramount's counsel has avowed that some of those documents contain material protected by the attorney-client privilege. Thus, those documents will need to be reviewed by counsel before the production can be completed. An estimate of $4,000 to complete such a privilege review seems reasonable, and "[r]easonable attorney's fees do count as expenses under the rule." Gensler at 1215.

Finally, Aquastar's request for sanctions against Paramount will be denied. Paramount's position in this matter was not unreasonable or frivolous—indeed, the Court is ordering Aquastar to pay Paramount's production costs. Moreover, Aquastar helped contribute to the cost of this litigation by advancing its one-day-too-late forfeiture argument.

Accordingly, **IT IS ORDERED** that:

(1) Aquastar's motion to compel (Doc. 1) is **GRANTED**, subject to the condition that Aquastar provide reasonable compensation to Paramount for its costs of production.

(2) Within 10 days of today's Order, Paramount must complete its privilege review of the responsive documents and produce those documents to Aquastar.

(3) At the time of production, Paramount must also provide Aquastar with proof of its actual costs of production (not to exceed $4,000) and Aquastar must thereafter timely provide reimbursement.

…

…

(4) The Clerk of Court is directed to close this case upon the issuance of this Order. If a future dispute somehow arises over Aquastar's obligation to reimburse Paramount for its production costs, either party may file a new action in this Court.

Dated this 16th day of January, 2019.

_____
Dominic W. Lanza
United States District Judge